**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
(SOUTHERN DIVISION)

| | | |
|---|---|---|
| **LEEANNE HORTON,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Civil Case No.: GLS-22-2951** |
| | ) | |
| **HILLARY M. CULLEN,** | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**MEMORANDUM OPINION**

Pending before the Court[1] is "Defendant Hillary M. Cullen's Motion for Summary Judgment," memorandum and authorities in support thereto, and "Statement of Material Facts Not in Dispute" (ECF Nos. 44, 44-1, 44-2) (collectively "the Motion"), filed by Defendant Hillary M. Cullen ("Defendant"). Plaintiff Leanne Horton ("Plaintiff") filed her opposition related thereto and "Statement of Material Facts in Dispute" (collectively "Opposition"), and Defendant filed her Reply. (ECF Nos. 45, 47). Thus, the matter is fully briefed, accordingly no hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023).

For the reasons set forth below, the Motion is **GRANTED.**

I. **BACKGROUND**

A. **Procedural Background**

On November 15, 2022 Plaintiff filed the Complaint against the Defendant asserting three causes of action arising only from a November 17, 2021 email sent by Defendant: Count I, defamation, libel *per se*; Count II: intentional infliction of emotional distress ("IIED"); and Count III: negligence. (ECF No. 1, "Complaint"). The Court issued a Scheduling Order, which included

---

[1] The parties have consented to the jurisdiction of this Court pursuant to 28 U.S.C. § 636(c). (ECF Nos. 8, 9).

deadlines for expert disclosures. (ECF No. 6). Subsequently, the parties filed a Joint Motion to Modify the Scheduling Order, including modifications to expert disclosure deadlines, which the Court granted. (ECF Nos. 13, 14).

Thereafter, Defendant filed a "Notice of Intent to file a Motion for a 90-day Extension of the Remaining Deadlines," to which Plaintiff opposed. (ECF Nos. 31, 32, 37). In response, the Court issued the Third Amended Scheduling Order, setting the deadlines for expert disclosures and the close of discovery. (ECF No. 38). Defendant filed a "Notice of Intent to file a Motion to Modify the Third Amended Scheduling Order," wherein Defendant requested that the Court exclude the deadline for Plaintiff's Rule 26(a)(2) expert disclosures because: (1) Plaintiff failed to provide any justification for her failure to timely identify an expert witness; and (2) Plaintiff failed to request an extension in the two previous joint requests to modify the Scheduling Order. (ECF No. 39). The Court ordered the parties to meet and confer to resolve the dispute and submit a Joint Status Report ("JSR"). (ECF No. 41). The parties filed a JSR four days after the Court-ordered deadline; the parties represented that they could not resolve the dispute regarding the deadline for Plaintiff's Rule 26(a)(2) expert disclosures, and requested that the remaining discovery deadlines be stayed to allow Defendant to file her motion for summary judgment. (ECF No. 42). The Court issued the letter order staying the Third Amended Scheduling Order and setting the summary judgment briefing schedule, with which the parties have fully complied.

**B. Factual Background[2]**

*1. Undisputed Facts*

Plaintiff is a devout Christian and the maternal grandmother of minor child, ZP. (Deposition of Plaintiff, "Plaintiff Dep.," 115:12-14, J.A. 0044). During the relevant time period,

---

[2] The parties submitted a Joint Appendix. (ECF No. 48) ("J.A."). Defendant's submissions can be found in this range: Bates Nos. 0001-0073. Plaintiff's submissions can be found in this range: Bates Nos. 0074-0081. The Court will refer

Defendant was ZP's mental health counselor. (Deposition of Defendant, "Defendant Dep.," 23:5-13, J.A. 0035). Prior to the initiation of the instant lawsuit, Plaintiff never met nor communicated with Defendant. (Plaintiff's Second Revised Answers to Defendant's First Set of Interrogatories, "Plaintiff's Ans. to Interrog.," at No. 14, J.A. 0019).

All Counts of the Complaint arise from a November 17, 2021 email titled "Recommendations" ("November email"). (November 17, 2021 Email from Defendant, "November Email," J.A. 0010, JA 0056, JA 0072). Defendant sent the November email to ZP's stepmother, wherein she made the following statements:

> To whom it concerns(sic),
>
> I am ZP's mental health counselor. I am highly suggesting that until an investigation has been completed by [Child Protective Services ("CPS")] that ZP is not to be left unsupervised with or in the care of her maternal grandmother ([Plaintiff]). There is an alarming pattern of behavioral changes and aggressive tendencies after ZP has spent the weekend with [Plaintiff]. I suspect there has been possible sexual abuse and or exposure to inappropriate sexual situations while with [Plaintiff]. The most recent incidents following her visitation with [Plaintiff] included (redacted). These incidents were unprovoked. ZP is currently at (redacted) being monitored (redacted). I highly recommend that [Plaintiff] is not allowed to have any unsupervised visits with ZP and or have any involvement in her care at this time. If you have any questions please email me at (redacted).
>
> Respectfully,
> Hillary Cullen, LCPC
> Licensed Clinical Professional Counselor #LC7911

(*Id.*). Defendant prepared the November email at the request of ZP's stepmother. (Defendant Dep., 23:5-13, J.A. 0035). On November 22, 2021, ZP's stepmother subsequently forwarded the email to the attorney representing ZP's parents in a pending custody dispute with Plaintiff. (November Email, J.A. 0010). Defendant knew that ZP's stepmother would forward the email to her attorney.

---

to the documents as, e.g., J.A. 0001. The Court views all evidence in the light most favorable to the Plaintiff, the nonmoving party. *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021).

(Defendant Dep., 16:18-18:1, J.A. 0074-75).[3] However, Defendant was unaware that the November email would be used in the pending custody dispute. (Defendant Dep., 23:14-19, J.A. 0035). Plaintiff had "no idea" why Defendant wrote the November email nor the purpose of the November email. (Plaintiff Dep., 155:14-22, J.A. 0054).

Thereafter, on December 6, 2021, Defendant sent another email ("December email") at the request of ZP's stepmother. (December 6, 2021 Email from Defendant, "December Email," J.A. 0011). The subject line of the December email is the case caption of the custody dispute between Plaintiff and ZP's parents, and contains the following statements:

> To whom it concerns (sic),
>
> I am ZP's counselor and believe based on previous topics discussed in sessions, as well as, behavioral changes following visits with [Plaintiff], that continued unsupervised visits and calls would contribute to negatively impacting [ZP]'s mental health. From her admittance to (redacted), the treating psychiatrist diagnosed [ZP] with (redacted). Navigating this new diagnosis with [ZP] requires positive support and treatment compliance. [ZP] has shared in sessions (redacted) have the absolute best outcome regarding her diagnosis of (redacted), any hindrance to her treatment and plan of care devised and monitored by her mental health professional providers will be a detriment to [ZP]'s progress and management of her mental health disorders. It is evident that after visits with or phone calls with [Plaintiff], [ZP]'s mental health is negatively impacted which is revealed in her behavioral changes. I highly recommend that until otherwise suggested, [Plaintiff] does not have unsupervised visits, calls, or encounters with [ZP]. This is to ensure that the establish mental health treatment and plan of care remain stable and consistent moving forward. (redacted). Again, as mentioned in my prior email, there is ongoing suspicion of possible sexual abuse. If you have any questions, please email me.
>
> Respectfully,
> Hillary Cullen, LCPC (#LC7911)
> Licensed Clinical Professional Counselor

---

[3] The parties submitted incomplete deposition transcripts. Defendant's deposition transcript can be found in this page range: J.A. 0025-0037 and 0074-77. Plaintiff's deposition transcript can be found in this page range: J.A. 0038-55 and 0078-79.

(*Id.*; JA 0073).

After sending the November email, Defendant determined that any possible sexual exposure that ZP encountered was "closer to the more innocent side." (Defendant Dep., 32:13-19, J.A. 0037). Defendant never reported her suspicions to CPS. (Defendant Dep., 23:20-25:17, J.A. 0076).

As a result of the Defendant's statements, Plaintiff suffered anxiety, post-traumatic stress disorder, hypertension, hair loss, insomnia, trouble eating, all of which negatively impacted her job performance. (Plaintiff Dep., 138:12-145:21, J.A. 0050-52; Affidavit of Plaintiff, "Plaintiff Affidavit," ¶ 14, J.A. 0081). Plaintiff also feared that her employer, a Christian-owned company, would terminate her if it learned of Defendant's statements. (Plaintiff Dep., 116:3-117:5, J.A. 0044-45; Plaintiff Affidavit, ¶ 18, J.A. 0081). The custody dispute concluded approximately four months after Defendant sent the November email. (Plaintiff Affidavit, ¶ 14, J.A. 0081). The court granted Plaintiff increased visitation rights with ZP. (Plaintiff Dep., 112:11-113:10, J.A. 0043-44).

## 2. *Disputed Facts*

According to the Defendant, the following are facts. First, Defendant prepared the November and December emails in her professional capacity as ZP's counselor, and in them she expressed her professional opinions and concerns based on observations, ZP's behavioral changes, and information from ZP's stepmother. (Defendant Dep., 117:3-118:9, J.A. 0045). Second, Plaintiff's ex-husband and brother continued to associate with Plaintiff even after learning of the November email. (Plaintiff Dep., 123:1-128:2, J.A. 0046-47). Third, it was after she wrote the December email that Defendant determined that any possible sexual exposure that ZP encountered when under Plaintiff's supervision was innocent. (Defendant Dep., 32:5-17, J.A. 0036). Fourth, the November email "actually helped" Plaintiff, as her visitation rights with ZP increased.

(Plaintiff Dep., 112:11-113:10, J.A. 0043-44). Fifth, Plaintiff's physical and mental symptoms only reoccurred after she filed the instant action and was reminded of the November email. (Plaintiff Dep., 112:11-113:10, J.A. 0043-44).

Plaintiff offers a counternarrative. First, Defendant prepared the November and December emails to advance the interests of ZP's parents in a custody dispute challenging Plaintiff's visitation rights with ZP. (Defendant Dep., 19:1-21:22, J.A. 0075). Second, Plaintiff suffered reputational harm because the November and December emails were false and not a representation of her as a woman of God. (Plaintiff Dep., 115:8-16, J.A. 0044). Third, Plaintiff's work performance also suffered as she could no longer focus on her job and feared that her employer would terminate her if it learned of the November and December emails. (Plaintiff Dep., 115:17-116:10, J.A. 0044; Plaintiff Affidavit, ¶ 18, J.A. 0081). Fourth, Defendant knew at the time she wrote the December email that any possible sexual exposure that ZP may have encountered was innocent. (Defendant Dep., 31:12-33:19, J.A. 0077). Fifth, ZP's father refused to follow the custody agreement after Defendant sent the November and December emails, causing Plaintiff to spend $60,000 in attorney's fees to defend her reputation and regain her visitation rights. (Plaintiff Dep., 113:7-12, J.A. 0044; Plaintiff Affidavit, ¶ 17, J.A. 0081). Sixth, Plaintiff's fear and anxiety reoccurs whenever she thinks about, or is reminded of, the November and December emails and Defendant's efforts to separate her from ZP. (Plaintiff Affidavit, ¶ 14, J.A. 0081).

## II.    STANDARD OF REVIEW

Motions for summary judgment shall be granted only if there are no genuine issues as to any material fact, such that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*,

477 U.S. 317, 322 (1986). In addition, "a fact is material if it might affect the outcome of the suit under the governing law." *Jones v. Chandrasuwan*, 820 F.3d 685, 691 (4th Cir. 2016).

The moving party bears the burden of showing that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(a); *Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987) (internal citation omitted). The burden can be satisfied through the submission of, e.g., pleadings, depositions, answers to interrogatories, admissions, and affidavits. *Celotex Corp.,* 477 U.S. at 323; *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984).

To defeat a motion for summary judgment, on the other hand, the nonmoving party cannot simply cast "metaphysical doubt" on the material facts, but rather must provide specific facts demonstrating a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (citing Fed. R. Civ. P. 56(e)); *see also Mitchell v. Data Gen. Corp.*, 12 F.3d 1310, 1315–16 (4th Cir. 1993) ("trial is unnecessary only if either the facts are undisputed, or if disputed, the dispute is of no consequence to the dispositive question").

The Court must construe the facts and documentary materials submitted by the parties, including the credibility and weight of particular evidence, in the light most favorable to the party opposing the motions. *Masson v. N.Y. Magazine, Inc.*, 501 U.S. 496, 520 (1991) (citing *Anderson*, 477 U.S. at 255). A "mere scintilla" of evidence is insufficient to create an issue of material fact. *See Barwick*, 736 F.2d at 958–59 (citing *Seago v. North Carolina Theatres, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C 1966)). Summary judgment is inappropriate if any material factual issue "may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

### III.    DISCUSSION

#### A.  Parties' Arguments

In her summary judgment motion, Defendant asserts that she is entitled to summary judgment on all counts for several reasons. First, with respect to Count I (defamation), a reasonable jury would find: (1) the November and December emails contain Defendant's professional opinion; ultimately, then, they are not defamatory statements; (2)  there is no evidence of actual malice and intentional conduct to establish a *prima facie* claim of defamation; and (3) that because the November email is privileged, Plaintiff cannot meet her burden in establishing the third element of a defamation claim, because Defendant and ZP's stepmother shared a common interest in ZP's mental health and safety.

Second, regarding Count II (intentional infliction of emotional distress), Defendant avers that: (1) there is no evidence from which a reasonable jury would infer that Defendant's conduct was extreme or outrageous; (2) Plaintiff failed to demonstrate a causal connection between the November and December emails and her severe emotional distress; and (3) no reasonable jury could find that Plaintiff's emotional distress was severe.

Third, with respect to Count III (negligence): (1) no reasonable jury would find that Defendant owed any duty to Plaintiff; and (2) because Plaintiff failed to designate an expert to opine the standard of care for mental health professionals, Plaintiff cannot establish that Defendant owed a duty of care to Plaintiff. Finally, with respect to all of her claims, Plaintiff cannot prove damages. (Motion, pp. 4-26).

In her Opposition, Plaintiff argues that summary judgment is not warranted, because there are genuine issues of material fact in dispute. With respect to Count I (defamation), Plaintiff alleges that, when construing the evidence in her favor, a reasonable jury would find that : (1) Defendant's

statements in the November and December emails were not opinions, but rather false statements of fact; (2) Defendant knowingly and falsely accused Plaintiff of sexual abuse with actual malice in her heart; and (3) Defendant did not act in furtherance of any interest entitled to protection when she sent the November and December emails.

Next, Regarding Count II (intentional infliction of emotional distress), Plaintiff argues that there are genuine issues of material fact in dispute because a reasonable jury could find that: (1) Defendant sent the November and December emails with the intent to aid ZP's parents in the custody dispute; (2) Defendant engaged in extreme and outrageous conduct by: (a) sending the November and December emails without marking them as confidential; and (b) not reporting her concerns to CPS, or speaking with Plaintiff about them; and (3) the November and December emails caused Plaintiff emotional distress.

With respect to Count III (negligence), Plaintiff argues that summary judgment should not be entered against her because a reasonable jury could find that Defendant had a "duty not to defame or demean the character of an innocent third party on speculation."[4] Finally, Plaintiff alleges that even though damages are presumed in libel *per se* cases, she suffered a variety of disorders related to stress caused by the false statements contained in the November and December emails. (Opposition, pp. 4-22).

In the Reply, Defendant advances three arguments: (1) there are no material disputes of fact as to any of the counts; (2) Plaintiff raised new arguments for the first time in the Opposition, namely that the patient-therapist privilege does not apply with respect to Counts I and II; (3) Plaintiff cannot justify her failure to designate an expert witness by the August 24, 2023 deadline,

---

[4] Plaintiff also maintains that the deadline for Plaintiff to designate an expert has "gone by the wayside" as the Court resolves the Motion.

and therefore Plaintiff cannot establish that Defendant owed a duty of care to Plaintiff with respect to Count III. (Reply, p. 1-10).

### B.  Only One Statement Is Alleged in the Complaint

Plaintiff first argues that summary judgment is improper because Defendant's "*emails* are unquestionably defamatory *per se*" to establish claims of defamation, IIED, and negligence. (Opposition, p. 8) (emphasis added). The Court finds this argument unavailing.

Upon a thorough review of the Complaint, the Court first finds that Plaintiff did not assert a defamation claim against Defendant related to the December email. Indeed, nowhere in the Complaint does Plaintiff even mention the December email. *See generally* Complaint. And, Plaintiff alleges that her defamation claim arises "from the Defendant publishing *a* document." *See Id.*, ¶ 5 (emphasis added). Plaintiff further alleges that "[o]n or about November 17, 2021, Defendant Cullen prepared a memorandum." *Id.*, ¶ 10. And, throughout the Complaint, Plaintiff only references this single memorandum authored by Defendant. *See e.g.,* Complaint, ¶ 28 ("Defendant Cullen made defamatory statements about Plaintiff which were contained in the written Memorandum"); *Id.*, ¶ 29 ("Defendant Cullen published the Memorandum"); *Id.*, ¶ 30 ("Defendant Cullen, without regard for the consequences, took no steps to prevent the republication of the Memorandum"). Despite this fact, Plaintiff asserts a defamation claim arising from the December email for the first time in the Opposition. *See* Opposition, pp. 6-18.

Similarly, the Court finds that Plaintiff's IIED claim also only arises from the November email. *See* Complaint, ¶ 41 ("The allegations of paragraphs 1 through 40 are incorporated herein by reference"); *Id.*, ¶ 42 ("Defendant's actions and acts to inflict mental cruelty on Plaintiff by accusing her of immoral and illegal acts and recommending that she not be allowed contact with her granddaughter, constituted an intentional infliction of emotional distress"). Again, Plaintiff

does not mention the December email, but rather alleges that the defamatory statements in the November email constitute a claim for intentional infliction of emotional distress. *See Id.*, ¶¶ 41-44. Nevertheless, for the first time in the Opposition, Plaintiff asserts an IIED claim arising from the December email. *See* Opposition, pp. 18-21.

The same is true with respect to Plaintiff's negligence claim. Plaintiff's negligence claim arises from the defamatory statements made in the November email. *See* Complaint ¶ 45 ("The allegations of paragraphs 1 through 44 are incorporated herein by reference"); *Id.*, ¶ 46 ("Defendant had a duty to not defame or demean the character of Plaintiff though the use and manipulation of information she received in conversations with an eleven-year-old child or to engage in wild speculation to damage Plaintiff's reputation, emotional wellbeing, or her familial relationships"); *Id.*, ¶ 51 ("Defendant breached this duty by publishing per se defamatory statements about Plaintiff, failing to take any precautions to prevent republication of the per se defamatory statements"). Notwithstanding these allegations in the Complaint, Plaintiff asserts a negligence action arising from the Defendants *communications* and distribution of the *emails* for the first time in the Opposition. *See* Opposition, p. 22.

It is well settled that, at the summary judgment stage, "the proper procedure for plaintiff[] to assert a new claim is to amend the complaint in accordance with Fed. R. Civ. P. 15(a)." *Barclay White Skanska, Inc. v. Battelle Mem'l Inst.*, 262 F. App'x 556, 563 (4th Cir. 2008) (citation omitted). Here, Plaintiff did not request leave to amend the Complaint to include the December email as it relates to any count. Thus, Plaintiff cannot argue that she met her burden of proof on a claim never pleaded. Next, Plaintiff may not amend the Complaint through raising arguments in her Opposition. *See Barclay*, 262 F. App'x at 563. Put another way, the Court will not consider the December email to the extent that Plaintiff attempts to raise defamation, IIED, or negligence

claims arising from the statements contained therein. *See Taylor v. Cudd*, Civ. No. TMC-18-765, 2020 WL 967447, at *3 (D.S.C. Feb. 28, 2020) (finding additional claim first raised in opposition to summary judgment motion "is not properly before the court and is not considered"); *see also Barclay White Skanska, Inc.*, 262 F. App'x at 563 (finding plaintiff "unable to raise new claims after discovery has commenced without further amending its complaint").

In sum, the Court will only evaluate the November 2021 statement, and the Court will begin its analysis with Count I.

**C. Defamation (Count I)**

Establishing a *prima facie* case of defamation in Maryland, requires proof of four elements: (1) the defendant made a defamatory statement to a third person; (2) the statement was false; (3) the defendant was legally at fault in making the statement; and (4) the plaintiff thereby suffered harm. *Offen v. Brenner*, 402 Md. 191, 198, 935 A.2d 719 (2007) (citing *Smith v. Danielczyk*, 400 Md. 98, 115, 928 A.2d 795, 805 (2007)). The tort of defamation includes both libel (written defamation) and slander (oral defamation). *Adam v. Wells Fargo Bank, N.A.*, Civ. No. ELH-09-2387, 2011 WL 3841547, at *21 (D. Md. Aug. 26, 2011) (citing *Gen'l Motors Corp. v. Parker*, 27 Md.App. 95, 113, 340 A.2d 767 (1975), *aff'd in part, rev'd in part on other grounds sub nom. Gen'l Motors Corp. v. Piskor,* 277 Md. 165, 352 A.2d 810 (1976)).

*1. First Element of a Defamation Claim*

Under the first element, a defamatory statement "'tends to expose a person to public scorn, hatred, contempt[,] or ridicule, thereby discouraging others in the community from having a good opinion of, or associating with, that person.'" *Norman v. Borison*, 418 Md. 630, 645, 17 A.3d 697, 705 n.10 (2011) (quoting *Offen*, 402 Md. at 198-99, 935 A.2d at 723-24); *see also Foley v. Hoffman*, 188 Md. 273, 284, 52 A.2d 476, 481 (1947) ("libel includes any unprivileged, false and

malicious publication which by printing, writing signs or pictures tends to expose a person to public scorn, hatred, contempt, or ridicule").

In addition, there are two types of defamatory statements: *per se* and *per quod*. *Metromedia, Inc. v. Hillman*, 285 Md. 161, 172–73, 400 A.2d at 1123 (1979). In general, a statement is defamatory *per se* when the hearer can "impute the defamatory character" from the words themselves and no further inference or context is necessary. *Indep. Newspapers, Inc. v. Brodie*, 407 Md. 415, 429, 966 A.2d 432, 441 (2009) (quoting *Metromedia*, 285 Md. at 172-73, 400 A.2d at 1123); *see also Shulman v. Rosenberg*, Case No. 24-C-16-001867, 2017 WL 5172642, at *9 (Md. Ct. Spec. App. Nov. 8, 2017). In such a case, the injurious nature of the words is a "self-evident fact of common knowledge of which the court takes judicial notice," such that it does not need to be "pleaded or proved." *M & S Furniture Sales Co. v. Edward J. De Bartolo Corp.*, 249 Md. 540, 544, 241 A.2d 126, 128 (1968). By contrast, defamation *per quod* requires proof of "extrinsic facts" that establish the defamatory character of the words through context or innuendo. *Metromedia*, 285 Md. at 171, 400 A.2d at 1123.

In order to determine "whether a publication is defamatory, [and presents a] question of law for the court, the publication must be read as a whole: '[W]ords have different meanings depending on the context in which they are used and a meaning not warranted by the whole publication should not be imputed.'" *Robinson v. City of Mount Rainier*, Civ. No. GJH-20-2246, 2021 WL 1222900, at *12 (D. Md. Mar. 31, 2021) (quoting *Piscatelli v. Van Smith*, 424 Md. 294, 35 A.3d 1140, 1147 (2012); *Shapiro v. Massengill*, 105 Md. App. 743, 661 A.2d 202, 217 (1995) ("Whether a statement is defamatory *per se* or *per quod* is a question of law."); *see also Clayton v. Fairnak*, Civ. No. JKB-18-2134, 2018 WL 6446440, at *2 (D. Md. Dec. 10, 2018).

A statement which imputes serious sexual misconduct is considered to be defamation *per se*. *See* Restatement (Second) of Torts §§ 570, 574 (1977); 50 Am. Jur. 2d *Libel & Slander* § 141 (2004).

Accordingly, the Court finds that, as a matter of law, the November 2021 statement is defamatory *per se*.

### 2.  Second Element of a Defamation Claim and the Law on Opinion(s)

Under the second element, a statement is "false" if it was "not substantially correct." *Piscatelli*, 424 Md. at 306, 35 A.3d at 1147. The plaintiff bears the burden of establishing falsity. *Lewis-Davis v. Bd. of Educ. of Baltimore Cnty.*, Civ. No. ELH-20-0423, 2021 WL 4772918, at *22 (D. Md. Oct. 13, 2021) (citing *Batson v. Shiflett*, 325 Md. 684, 726, 602 A.2d 1191, 1213 (1992)).

Importantly, an individual generally cannot be held liable for a statement of opinion—a defamation claim must be premised on a false statement of fact. *Robinson*, 2021 WL 1222900, at *12 (citing *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339–40 (1974) ("Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas")). When a statement is made in the form of an opinion, it becomes actionable only if it implies the allegation of undisclosed facts as the basis for the opinion. *Agora, Inc. v. Axxess, Inc.*, 90 F. Supp. 2d 697, 704 (D. Md. 2000), *aff'd*, 11 F. App'x 99 (4th Cir. 2001) (internal quotation marks and citation omitted); *see also Biospherics, Inc. v. Forbes, Inc.*, 151 F.3d 180, 185 (4th Cir. 1998).

### 3.  Third Element of a Defamation Claim and the Law on Fault and Malice

Under the third element, fault may be based on negligence or constitutional malice, sometimes referred to as "actual malice." *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80

(1964); *Batson*, 325 Md. at 711, 602 A.2d at 1210. Actual malice requires that the defendant made the statement "with actual knowledge" that the statement is false, "coupled with [his or her] intent to deceive another by means of that statement." *Piscatelli*, 424 Md. at 307-08, 35 A.3d at 1148 (quoting *Ellerin v. Fairfax Sav. F.S.B.*, 337 Md. 216, 240, 652 A.2d 1117, 1129 (1995)) (internal quotation marks omitted). Actual malice is established when the plaintiff shows the defendant published the statement either with knowledge of its falsity or with reckless disregard for its truth. *Brown v. Brockett*, Civ. No. JFM-11-240, 2012 WL 1552783, at *7 (D. Md. Apr. 27, 2012) (citing *Henderson*, 607 F.Supp.2d at 731). Negligence requires that the defendant failed to "act as a reasonable person under the circumstances." *Henderson v. Claire's Stores, Inc.*, 607 F. Supp. 2d 725, 731 (D. Md. 2009).

A plaintiff cannot prove the third element of a defamation claim if the allegedly defamatory statements are privileged. *See Gomer v. Home Depot U.S.A., Inc.*, Civ. No. GLR-16-356, 2016 WL 5791226, at *6 (D. Md. Oct. 4, 2016) (citing *Szot v. Allstate Ins. Co.*, 161 F.Supp.2d 596, 607–09 (D. Md. 2001)).

For reasons of public policy, the law of defamation recognizes certain communications as privileged, and thereby affords those who publish such communications immunity from liability. *Connolly v. Lanham*, 685 F. Supp. 3d 312, 340 (D. Md. 2023) (quoting *Miner v. Novotny*, 304 Md. 164, 498 A.2d 269, 270 (1985).

For instance, "[t]he common law conditional privileges rest upon the notion that a defendant may escape liability for an otherwise actionable defamatory statement, if publication of the utterance advances social policies of greater importance than the vindication of a plaintiff's reputational interest." *Connolly*, 685 F. Supp. 3d at 340 (quoting *Marchesi v. Franchino*, 283 Md. 131, 387 A.2d 1129, 1131 (Md. 1978)). As relevant here, a defamatory statement is conditionally

15

privileged where "persons having a common interest in a particular subject matter correctly or reasonably [] believe that facts exist which another sharing such common interest is entitled to know." *Gohari v. Darvish*, 363 Md. 42, 57, 767 A.2d 321, 329 (2001) (quoting *Hanrahan v. Kelly,* 269 Md. 21, 28, 305 A.2d 151, 156 (1973)).

The common law conditional privilege is broad and may apply to "an infinite variety of factual circumstances." *Id.* However, in Maryland, the "courts recognize that a qualified or conditional privilege to defamation is conditioned upon the absence of malice and is forfeited if it is abused." *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 761 (D. Md. 2015) (quoting *Piscatelli*, 424 Md. at 1147)). Put another way, if a party acted with malice, then the alleged defamatory statements are not protected by a conditional privilege. *See Piscatelli*, 35 A.3d at 1147. Finally, "[w]hether a conditional privilege exists is a question of law, and the defendant bears the burden of proof to establish" that she can avail herself of the privilege. *Salisbury Univ.*, 123 F. Supp. 3d at 761 (quoting *Piscatelli*, 424 Md. at 1147)).

In addition, Maryland recognizes an "absolute privilege." This type of privilege is distinguishable from a conditional or qualified privilege: "the absolute privilege provides immunity regardless of the purpose or motive of the defendant, or the reasonableness of his conduct, while the [common interest privilege] is conditioned upon the absence of malice and is forfeited if it is abused." *Smith v. Danielczyk*, 400 Md. 98, 117, 928 A.2d 795, 806 (2007). Maryland recognizes an absolute privilege for three types of statements: (1) those made in a judicial proceeding; (2) those made in a quasi-judicial proceeding; and (3) those made extrinsic to a judicial or quasi-judicial proceeding. *State Farm Mut. Auto. Ins. Co. v. Slade Healthcare, Inc.*, 381 F. Supp. 3d 536, 566 (D. Md. 2019) (citing *Norman v. Borison*, 418 Md. 630, 650-56 n.10, 17 A.3d 697, 708-12 (2011)).

16

### 4. *Fourth Element of a Defamation Claim and Damages*

Under the fourth element, "actual harm must generally be established, but in cases in which the statement was defamatory *per se* and was made with actual malice, harm may be presumed." *Doe v. Johns Hopkins Health Sys. Corp.*, 274 F. Supp. 3d 355, 366 (D. Md. 2017) (citing *Hearst Corp. v. Hughes*, 297 Md. 112, 466 A.2d 486, 493 (1983)).

Actual damages may include economic loss, as well as "impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." *Clayton v. Fairnak*, Civ. No. JKB-18-2134, 2018 WL 6446440, at *4 (D. Md. Dec. 10, 2018) (quoting *Jacron Sales Co. v. Sindorf*, 276 Md. 580, 350 A.2d 688, 692 (Md. 1976)); *see also Hunt v. Mercy Med. Ctr.*, 121 Md. App. 516, 531 (1998).

### 5. *Third Element of Defamation Claim: Conditional Privilege & Malice*

Defendant first argues that the common interest conditional privilege applies to the November email because Defendant and ZP's stepmother share a legitimate common interest in information related to ZP and ZP's mental health. Next, Defendant argues that the November email is also protected by an absolute privilege because it was published during the course of a judicial proceeding, namely the ongoing custody dispute.

Plaintiff counters with several arguments. First, Plaintiff argues that Defendant cannot rely upon the patient-therapist privilege (conditional privilege) Defendant the November and December emails were unrelated to therapy and were sent to ZP's stepmother without being marked as confidential. Second, Plaintiff argues that the November and December emails are not protected by an absolute privilege because: (a) Defendant was not a party, witness, or attorney to the custody dispute; (b) Defendant did not write the November and December emails to communicate with ZP's stepmother but rather Defendant wrote the emails to communicate with

the attorney representing ZP's parents in the custody dispute; and (c) Defendant failed to mark the November and December emails as confidential, causing the emails to be unnecessarily published to individuals not involved in the judicial proceedings. Finally, Plaintiff argues that the common interest privilege does not apply to the November and December emails because: (a) Defendant did not send the emails in good faith because she intended for the emails to give ZP's parents an advantage in the custody dispute; (b) Defendant acted with malice because she knew at the time she wrote the December email that any exposure to sexual situations was innocent; and (c) the fact that Defendant did not mark the emails as confidential raises questions about whether the November and December emails were unnecessarily disclosed to parties with no legitimate interest in the information.

In the Reply, Defendant argues that: (1) Plaintiff contends for the first time that the patient-therapist privilege does not apply to this case; (2) Plaintiff cites no caselaw to support her argument that an absolute privilege is disqualified for failure to mark the November and December emails as confidential; and (3) Plaintiff cited to no evidence in the record that Defendant intended for the November and December emails to assist with the custody dispute.

As a preliminary matter, Plaintiff argues that the patient-therapist privilege is inapplicable because the November and December emails were unrelated to ZP's therapy and not marked as confidential. (Opposition, p. 16).

The Supreme Court recognized the psychotherapist-patient privilege in *Jaffee v. Redmond*, 518 U.S. 1 (1996). The Supreme Court held that "confidential communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." *See Richardson v. Sexual Assault/Spouse Abuse Res. Ctr., Inc.*, 764 F. Supp. 2d 736, 739 (D. Md. 2011)(citing *Jaffee,* 518

U.S. 15). To assert this privilege, a party "must show that the allegedly privileged communications were made (1) confidentially (2) between a licensed psychotherapist and her patient (3) in the course of diagnosis or treatment." *Richardson, supra,* at 739 (quoting *In re Grand Jury Proceedings (Gregory P. Violette),* 183 F.3d 71, 73 (1st Cir.1999)); *see also Stokes v. IKEA US Retail, LLC*, Civ. No. JMC-22-01377-, 2023 WL 1970476, at *3 (D. Md. Feb. 13, 2023) (the psychotherapist-patient "privilege protects against compelled testimony concerning conversations between the patient and the licensed therapist, as well as compelled disclosure of notes taken during their counseling sessions").

As stated above, the patient-therapist privilege protects communications from compelled disclosures during discovery. *See Richardson*, 764 F. Supp. 2d at 739. Here, discovery has closed and, as Defendant correctly argues, Plaintiff raised the issue of the patient-therapist privilege for the first time in the Opposition without citing to any caselaw. Moreover, Defendant does not argue the patient-therapist privilege as a basis for summary judgment in the Motion. *See generally* Motion. Thus, the Court declines to address Plaintiff's argument as it relates to the patient-therapist privilege.

The Court will address whether a conditional privilege applies to the November email, namely the common interest privilege.

A "conditional privilege is broad and may apply to an infinite variety of factual circumstances." *Gohari*, 363 Md. at 56–57, 767 A.2d at 328–29 (internal quotation marks and citations omitted). However, "[a] statement is accorded a qualified privilege only when the occasion shows that the communicating party and the recipient have a mutual interest in the subject matter, or some duty with respect thereto." *McDermott v. Hughley*, 317 Md. 12, 28, 561 A.2d 1038, 1046 (1989) (internal quotation marks and citation omitted). Put another way:

> An occasion is conditionally privileged when the circumstances are such as to lead any one of several persons having a common interest in a particular subject matter correctly or reasonably to believe that facts exist which another sharing such common interest is entitled to know.

*Gohari*, 363 Md. at 57, 767 A.2d at 329 (citing *Hanrahan*, 269 Md. at 28, 305 A.2d at 156). In determining whether the common interest privilege applies, Maryland courts focus on whether the communication is made in response to a request:

> The fact that the recipient has made the request is an indication that he, at least, regards the matter in respect to which information is desired as sufficiently important to justify the publication of any defamatory matter than may be involved in response to the request. In that case, the person requested to give information is not required nicely to evaluate the interest that the person making the request seeks to protect, nor to make that comparison otherwise required of him, between the harm likely to be done to the other's reputation if the defamatory matter is false and the harm likely to be done to the third person's interest if [] it should prove true.

363 Md. 42, 60, 767 A.2d 321, 330–31 (citing Restatement (Second) of Torts § 595, at 273–74). Thus, "where the defamatory publication is in response to an inquiry and not volunteered, the defendant is afforded greater latitude in what he may say about the plaintiff without incurring liability." *Gohari*, 363 Md. at 60–61, 767 A.2d at 331 (quoting *Happy 40, Inc. v. Miller,* 63 Md.App. 24, 35, 491 A.2d 1210, 1216 (1985) (cleaned up)).

Defendant relies on *Gohari*, 363 Md. 42, 767 A.2d 321 to argue that she shares a common interest in ZP's mental health with ZP's stepmother. The Court finds instructive *Gohari* and *Nath v. Belzberg*, Civ. No. WDQ-06-3454, 2007 WL 9643367 (D. Md. July 13, 2007).

In *Gohari*, a former franchise employee sought to open his own franchise with a franchisor. The franchise application required the franchise owner to opine on his former employee's qualifications in an email to the franchisor. Upon receiving the email from the franchise owner, the franchisor determined that the former employee lacked the requisite experience to open a

franchise. Thereafter, the former employee brought a defamation action against the franchise owner. There, the court held that "there is a common interest in maintaining a candid business relationship in furtherance of the franchisee's individual success and the overall success of the franchisor." 363 Md. at 58, 767 A.2d at 330. Thus, the court held that the defamatory statements were protected by the common interest privilege. 363 Md. at 47-58, 767 A.2d at 323-30.

In *Nath*, the defamation action arose from statements made to the mothers of patients treated by both the plaintiff and the defendant. Specifically, when the patients' mothers asked the defendant about their children's treatment for brachial plexus injury ("BPI"), the defendant told the mothers that the plaintiff, who had performed surgery on the children, was under investigation for fraud and probably did not follow protocols when performing surgery. The defendant asserted that these statements were privileged because he and the patients' mothers shared a common interest in the patients' treatment. The court recognized the seriousness of BPI, the concern over the safety of a child, and that the patients' mothers solicited his opinions. Therefore, the court held that the defendant's statements were relevant to the treatment of his patients and related to a common interest shared between the defendant and his patients. 2007 WL 9643367, at *1-4.

In the instant case, construing the facts of the instant case in the light most favorable to Plaintiff, the record reflects that Defendant was ZP's mental health counselor. (Defendant Dep., 23:5-13, J.A. 0035). And at the request of ZP's stepmother, Defendant sent the November email, wherein she made statements about ZP's behavioral changes and observations following an incident while under Plaintiff's care. (Defendant Dep., 23:5-13, J.A. 0035; November Email, J.A. 0010). Given that Defendant and ZP's stepmother share a legitimate common interest in information related to ZP and ZP's mental health, the instant case is analogous to *Gohari* and *Nath*. Thus, even when viewing the facts in Plaintiff's favor, the Court finds that Defendant has met her

burden of showing that the common interest privilege applies to the November email sent to ZP's stepmother. *See Gohari*, 363 Md. at 60–61, 767 A.2d at 330–31 (where defamatory statements made in response to inquiry to a third-party with a shared common interest were protected by a qualified privilege); *see also Nath*, 2007 WL 9643367, at *4 (finding doctor's statements in response to patient's mothers were qualifiedly privileged because the doctor shares common interest in the treatment of patients).

Third, as held earlier, this privilege is "conditioned upon the absence of malice and is forfeited if it is abused." *Piscatelli*, 35 A.3d at 1147. Thus, the question before the Court is whether Defendant acted with malice and therefore forfeited the protection of the common interest privilege. *See Salisbury Univ.*, 123 F. Supp. 3d at 758 ("Once a conditional privilege has been identified, a plaintiff's defamation claim will only survive if he can show that the defendant acted with malice"). As stated above in Section III.C.3, malice requires that Defendant made the statement accusing Plaintiff of exposing ZP to inappropriate sexual situations with actual knowledge that the statement was false, coupled with Defendant's intent to deceive by means of that statement. *See Piscatelli*, 424 Md. at 307-08, 35 A.3d at 1148 (quoting *Ellerin*, 337 Md. at 240, 652 A.2d at 1129).

While the existence of a conditional privilege is treated as a question of law for a court to resolve, "whether the defendant has abused this privilege is normally a question of fact for the jury." *Mazer v. Safeway, Inc.*, 398 F. Supp. 2d 412, 430 (D. Md. 2005) (citing *Polanco v. Fager*, 886 F.2d 66, 70 (4th Cir.1989)). Nonetheless, a court may rule, as a matter of law, "if the record contains no evidence that the defendant acted with express or actual malice." *Mazer, supra*, at 430 (citing *Szot*, 161 F.Supp.2d at 608).

Defendant argues that Plaintiff cannot establish a *prima facie* defamation claim because her only "proof" of malice are the November and December emails themselves and Plaintiff's state of mind. In response, Plaintiff argues that: (1) Defendant "blindly act[ed]" as ZP's parents' puppet rather than investigating the underlying facts and marking the emails as confidential; and (2) Defendant had actual knowledge at the time she wrote the December email that her statements were false.

The Court finds instructive, *Mazer*. In *Mazer*, plaintiff submitted a resignation letter to his employer so that he could join a competitor's business, which prompted his employer to conduct an investigation of plaintiff's emails. The employer's investigation revealed that the plaintiff had downloaded confidential company information on his personal computer. Because of this, the employer terminated plaintiff and gave plaintiff two termination letters. The first termination letter stated that the plaintiff was terminated for cause. The second letter, which was sent to plaintiff's future employer, accused plaintiff of misappropriating confidential company information. The plaintiff brought a defamation claim against his former employer alleging that the second termination letter implied that he shared confidential information with his future employer in violation of the Maryland Uniform Trade Secrets Act (MUTSA). The court found that the second termination letter was conditionally privileged because plaintiff's former and future employers shared a common interest in complying with MUTSA. Thus, the plaintiff's defamation claim turned on whether the former employer acted with malice. The court recognized that the former employer had some basis for the allegations in the second termination letter. Nevertheless, the court found that plaintiff could not demonstrate actual malice simply because the former employer could not substantiate the statements it made in the second letter. Therefore, the court held that

although the second termination letter may have been premature, it was not enough to demonstrate that the former employer acted with actual malice. 398 F. Supp. 2d at 416-431.

In this case, Defendant implied that Plaintiff sexually abused ZP in the November email. (November Email, J.A. 0010). However, even when construing the facts in Plaintiff's favor, the evidence in the record reflects that Defendant *later* determined that any exposure to inappropriate sexual situations was innocent. (Defendant Dep., 32:13-19, J.A. 0037) (emphasis added). Thus, although the parties dispute whether Defendant knew at the time she sent the December email that her statements were false, there is no evidence before the Court that Defendant knew at the time she wrote the November email that her statements were false. Simply put, the absence of actual malice is fatal to Plaintiff's defamation claim. Accordingly, the instant case is analogous to *Mazer*.

As stated above, the November email is conditionally privileged. Because Plaintiff failed to set forth any evidence for which a reasonable jury could conclude that Defendant knew that her statements were false when she sent the November email to ZP's stepmother, Plaintiff cannot demonstrate that Defendant abused and therefore forfeited the privilege. *See Piscatelli*, 35 A.3d at 1147; *see also Mazer*, 398 F. Supp. 2d at 430 ("A defendant's communication may lose the conditional privilege if the defendant abused the privilege"). Accordingly, summary judgment is warranted because the November email is protected by the common interest privilege. *See Klingshirn v. Fid. & Guar. Life Ins. Co.*, Civ. No. RDB-12-542, 2013 WL 4506271, at *7 (D. Md. Aug. 22, 2013) (granting summary judgment where statement was made to further a protected interest and plaintiff could not demonstrate malice).

To the extent that Plaintiff argues that Defendant sent the November email with the intent to advance the interests of ZP's parents, the Court finds that argument unavailing. Plaintiff's argument is directly contradicted by her deposition testimony that she had "no idea" why

Defendant sent the November email. Moreover, it is undisputed that Defendant was not aware that the November email would be used in the custody dispute. Thus, Plaintiff cannot establish actual malice to demonstrate that Defendant waived the common interest privilege with respect to the November email. *See Edwards v. Am. Med. Ass'n, Inc.*, Civ. No. GLR-22-3297, 2023 WL 5880284, at *5 (D. Md. Sept. 11, 2023) (dismissing defamation claim where defendants' statements are protected by a conditional privilege).

Finally, the Court will address the parties' argument as to whether the November email is protected by an absolute privilege. Defendant argues that statements made in the November email are shielded by an absolute privilege because the November email was published in a judicial proceeding. Plaintiff counters that the absolute privilege does not apply for three reasons: (1) Defendant was not a party, witness, or attorney to the custody dispute; (2) Defendant did not write the November and December emails to communicate with ZP's stepmother but rather Defendant wrote the emails to communicate with the attorney representing ZP's parents in the custody dispute; and (3) Defendant failed to mark the November and December emails as confidential, causing the emails to be unnecessarily published to individuals not involved in the judicial proceedings.

The Court finds that the parties have misinterpreted the law of defamation, as they argue at great length about the republication of Defendant's statements in a judicial proceeding. As held above in Section III.B, the first element of a *prima facie* defamation claim requires that "the defendant made a defamatory statement to a third person (a requirement known as publication)." *Robinson*, 2021 WL 1222900, at *11. In this case, Defendant made the alleged defamatory statements in an email to ZP's stepmother. *See* November Email, J.A. 0010. Thus, even though the November email was later republished to the attorney representing ZP's parents in the custody

25

dispute, and republished again when docketed in the custody dispute, the Court need not address whether such republications are protected by an absolute privilege. Put another way, the applicability of the absolute privilege turns on the initial publication of the November email, i.e., when Defendant sent to ZP's stepmother. Accordingly, it is immaterial that the November email was republished in a judicial proceeding in determining whether Defendant's publication to ZP's stepmother is protected by an absolute privilege. *See Jones, supra,* 820 F.3d at 691 ("A fact is material if it might affect the outcome of the suit under the governing law").

Because Defendant only advances argument as it relates to the republication of the November email to support its argument, the Court finds that Defendant has failed to meet her burden in establishing that an absolute privilege applies. Thus, Defendant is not entitled to summary judgment on the issue of an absolute privilege. *See Siskind v. Friedberg*, Civ. No. SAG-10-1011, 2012 WL 1243085, at *3 (D. Md. Apr. 10, 2012) (denying summary judgment where the defendant failed to produce evidence essential to establish that the defamatory statement was protected by absolute privilege).

### 6.   *Second Element of Defamation Claim and the Law on Opinions*

In light of its holding in Section III.B.5, *supra*, the Court need not address the merits of Defendant's substantive arguments on the remaining issues related to Count I, as Defendant's statements are protected by a conditional privilege. However, assuming *arguendo* that Defendant's opinions were not privileged, Defendant's statements must be actionable in order for Plaintiff to prevail on this claim.

An opinion may constitute actionable defamation, "only if the opinion can be reasonably interpreted to declare or imply untrue facts." *Biospherics*, 151 F.3d at 184 (citing *Milkovich v. Lorain Journal Co.,* 497 U.S. 1, 20, 110 S.Ct. 2695, 2706 (1990)). However, "[i]f the facts from

which a defendant forms his or her opinion are given or are readily available and those facts cannot be proved false, the defendant is not subject to liability for the opinion." *Robinson*, 2021 WL 1222900, at *12 (quoting *Peroutka*, 116 Md.App. at 320, 695 A.2d at 1297).

Defendant argues that she is entitled to summary judgment because her statements reflected her professional opinion that was based on clinical discussions with ZP, professional observations, and interpretations of ZP's behavior. In response, Plaintiff argues that Defendant's statements are not opinions but rather statements of fact that are provably false. To advance her argument, Plaintiff relies on *Biospherics*, *supra*. In the Reply, Defendant argues that Plaintiff failed to demonstrate that the disclosed facts, incidents, and personal observations that formed the basis of the November email are false and demeaning.

The Court finds Plaintiff's reliance on *Biospherics* to be misplaced. In *Biospherics*, the plaintiff brought a defamation claim against the defendant for publishing statements in an article. The district court found that the article may have been defamatory but was nevertheless a constitutionally protected opinion. On appeal, the Fourth Circuit found that the alleged defamatory statement was followed by three sentences in which the defendant disclosed its factual bases for making the allegedly defamatory statement. The plaintiff did not challenge these factual bases, but rather argued that the statement itself was defamatory. Thus, the court held that "[w]hen the bases for the conclusion are fully disclosed, no reasonable reader would consider the term anything but the opinion of the author drawn from the circumstances related." 151 F.3d 185. (internal quotation marks and citation omitted) (cleaned up).

In the instant case, construing the facts in Plaintiff's favor, Defendant's statements in the November email imply that Plaintiff sexually abused ZP. *See* November Email, J.A. 0010 ("I suspect there has been possible sexual abuse and or exposure to inappropriate sexual situations

27

while with [Plaintiff]"). However, Defendant explains the facts she relied upon to reach this conclusion in the following sentences:

> There is an alarming pattern of behavioral changes and aggressive tendencies after ZP has spent the weekend with [Plaintiff]. The most recent incidents following her visitation with [Plaintiff] included (redacted). These incidents were unprovoked. ZP is currently at (redacted) being monitored (redacted). I highly recommend that [Plaintiff] is not allowed to have any unsupervised visits with ZP and or have any involvement in her care at this time. If you have any questions please email me at (redacted).

(November Email, J.A. 0010). Importantly, Plaintiff does not challenge the falsity of these disclosed facts, as Plaintiff only argues that Defendant's opinion is provably false. Thus, even when viewing the evidence in Plaintiff's favor, the Court finds that Defendant disclosed the facts that formed the basis of her opinion that there may have been possible sexual abuse and or exposure to inappropriate sexual situations. Because Defendant expressly stated the factual bases for her opinion, and Plaintiff failed to cite any evidence in the record to demonstrate that the stated factual bases were false, the Court finds that Defendant's statement is an opinion. *See Robinson*, 2021 WL 1222900, at *12 ("But these statements, however charged and ultimately damaging to her reputation, are the author's thoughts and commentary on true events—not statements of fact that can be proved decidedly false"); *see also Biospherics*, 151 F.3d at 186 (finding plaintiff's failure to challenge the accuracy of the factual bases "dooms its challenge to this statement"). Thus, Defendant's statements in the November email are protected opinions, and therefore are not subject to liability under Count I. Accordingly, the Motion is granted with respect to Count I.

### D.  Intentional Infliction of Emotional Distress (Count II)

In order to prevail on a claim for IIED in Maryland, a plaintiff must show that: (1) the defendant's conduct was intentional or reckless; (2) the defendant's conduct was extreme and outrageous; (3) there is a causal connection between the defendant's wrongful conduct and the

emotional distress; and (4) the emotional distress was severe. *Harris v. Jones*, 281 Md. 560, 567, 380 A.2d 611, 614 (1977); *see also Bailey v. Budget Rent a Car Sys., Inc*., Civ. No. ELH-16-00636, 2016 WL 1721386, at *5 (D. Md. Apr. 29, 2016) (citations omitted).

A defendant's conduct is intentional or reckless, "where he desires to inflict severe emotional distress, and also where he knows that such distress is certain, or substantially certain, to result from his conduct; or where the defendant acts recklessly in deliberate disregard of a high degree of probability that the emotional distress will follow." *Harris*, 281 Md. at 560.

"Extreme and outrageous" conduct is defined as "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Harris*, 281 Md. at 567, 380 A.2d at 614. In evaluating whether the identified conduct is extreme and outrageous, courts should consider multiple factors, including the context in which the conduct occurred, the personality of the plaintiff and her susceptibility to emotional distress, and the relationship between the defendant and plaintiff. *Brengle v. Greenbelt Homes, Inc.*, 804 F. Supp. 2d 447, 453 (D. Md. 2011).

A plaintiff must "show that he suffered a *severely* disabling emotional response to the defendant's conduct." *Caldor, Inc. v. Bowden*, 330 Md. 632, 643, 625 A.2d 959, 964 (1993) (quoting *Harris*, 281 Md. at 570, 380 A.2d at 616) (emphasis in original). The intensity and the duration of the distress "are factors to be considered in determining its severity." *Harris*, 281 Md. at 571.

Defendant argues that she is entitled to summary judgment on Plaintiff's IIED claim because: (1) it is not extreme or outrageous for a mental health counselor to communicate her observations and recommendations to her minor patient's stepmother; (2) Plaintiff failed to produce any evidence to demonstrate that Defendant's conduct caused her distress; and (3)

Plaintiff cannot demonstrate that she suffered severe distress. Plaintiff counters that: (1) Defendant's conduct was extreme and outrageous because she failed to correct her statements in the November email, despite knowing at the time she wrote the December email that any exposure was innocent; and (2) her anxiety and fear reoccurs when she is reminded of the November and December emails. (Opposition, pp. 12, 18-21). To advance her argument, Plaintiff relies on Defendant's deposition testimony.

In Maryland, it is exceedingly rare for plaintiffs to prevail on claims of IIED. *Baker-Proctor v. PNC Bank, N.A.*, Civ. No. DKC-21-3299, 2023 WL 1801932, at *4 (D. Md. Feb. 7, 2023). The tort of IIED "is to be used sparingly and only for opprobrious behavior that includes truly outrageous conduct.... 'of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind.'" *Salisbury Univ.*, 123 F. Supp. 3d at 759 (quoting *Kentucky Fried Chicken Nat'l Mgmt. Co. v. Weathersby,* 326 Md. 663, 607 A.2d 8, 11 (1992)).

Indeed, in Maryland, the tort of IIED "has been sustained" on very few occasions. *Haines v. Vogel*,  250 Md. App. 209, 230 (2021). Those cases present facts more extreme circumstances than are at play in the instant case. *Haines*, at 230-231 (citing *Faya v. Almaraz*, 329 Md. 435(1993)(HIV-positive surgeon operated on patients without their knowledge that he had the disease); *Figueiredo-Torres v. Nickel*, 321 Md. 642, 653(1991)(psychologist engaged in sexual relations with plaintiff's wife during the time that he was acting as therapist for the husband and wife); *B.N. v. K.K.*, 312 Md. 135 (1988)(physician with herpes had sex with nurse, infected her, and did not tell her that he had the disease); *Young v. Hartford Accident & Indem. Co.,* 303 Md. 182 (1985)(workers' compensation insurer insisted that claimant be evaluated by a psychiatrist for the "'sole purpose' of harassing her and forcing her to drop her claim or commit suicide")).

Construing the facts in Plaintiff's favor, the Court finds that there is no evidence before it from which a reasonable jury could find that when Defendant sent the November email her conduct was sent with a "desire to inflict severe emotional distress," or was sent "recklessly in deliberate disregard of a high degree of probability that emotional distress will follow." *Harris*, at 567.   There is no evidence from which a reasonable jury could find Defendant was acting with the requisite intent toward Defendant. Plaintiff's reliance upon the November and December emails and text message to demonstrate Defendant's state of mind is misplaced. As held previously, only the November email is at issue. When deposed, Plaintiff conceded that her only evidence as to the Defendant's deliberate intent or recklessness was these documents, and that she had no idea why Defendant wrote the November email. (Plaintiff Dep. 134:21-136:5; 155:14-22, J.A. 49, 54). Indeed, evidence as to the Plaintiff's state of mind is irrelevant. The act of sending the November email, by itself, is insufficient to demonstrate the Defendant had the requisite culpable state of mind. *Freyd*, 972 F. Supp. 940, 944 (D. Md. 1997). The only reasonable inference that jury could infer is that Defendant, ZP's mental health counselor, simply stated her ongoing suspicion of possible sexual abuse and made additional recommendations for navigating ZP's "alarming" behavioral changes in light of her new diagnosis.

With respect to the second element, even when construing the facts in Plaintiff's favor, the Court finds that Defendant's conduct falls short of extreme and outrageous. As held earlier, there is no evidence before me from which a reasonable jury cold infer what the Defendant had a culpable state of mind when she sent the November email.  Sending an email in one's capacity as ZP's mental health counselor, with an articulation of just ongoing suspicion of possible sexual abuse is not the kind of conduct that the Maryland courts have found to "rise to the level of being 'intolerable' and 'outrageous." *Haines, supra*  at 230.  Thus, the Court finds as a matter of law,

Plaintiff cannot satisfy her burden as to the second element. *See Poyer v. Sears Roebuck Co.*, 741 F. Supp. 98, 101 (D. Md. 1990) (granting summary judgment where conduct was not "so atrocious and extreme as to be intolerable among civilized persons").

Because the Plaintiff  cannot meet her burden on the first and second elements, the Court need not address the remaining elements. In sum, the Motion is granted on Count II.

**E.  Negligence (Count III)**

To establish a cause of action for negligence in Maryland, a plaintiff must prove four elements: (1) defendant was under a duty to protect the plaintiff from injury; (2) the defendant breached that duty; (3) the plaintiff suffered actual loss or injury; and (4) the loss or injury proximately resulted from the defendant's breach of the duty. *See Todd v. Mass Transit Admin*., 373 Md. 149, 155, 816 A.2d 930 (Md. 2003) (internal quotations and citations omitted).

Duty may be defined as "an obligation, to which the law will give recognition and effect, to conform to a particular standard of conduct toward another." *Salisbury Univ.*, 123 F. Supp. 3d at 763 (quoting *Patton v. U.S. Rugby Football,* 381 Md. 627, 851 A.2d 566, 571 (2004)). In determining whether a duty exits, a court considers several factors:

> The foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered the injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost and prevalence of insurance for the risk involved.

*Salisbury*, 123 F. Supp. 3d at 763 (quoting *Pendleton v. State,* 398 Md. 447, 461-462 921 A.2d 196, 205 (2007). While foreseeability is "often considered among the most important of the factors [that] courts consider in determining the existence of duty, its existence alone does not suffice to

establish a duty under state law." *Remsburg v. Montgomery*, 376 Md. 568, 583, 831 A.2d 18, 26 (2003).

Defendant argues that she is entitled to summary judgment because: (1) Defendant does not owe Plaintiff a duty and, relatedly, Plaintiff maintained no special relationship with Defendant that would give rise to a duty; and (2) Plaintiff failed to designate an expert to opine the standard of care. In response, Plaintiff argues that: (1) the November and December emails constitute a breach of "a duty not to defame or demean the character of an innocent third party on speculation;" (2) at a minimum, Defendant owed Plaintiff the duty of care of a reasonable person; (3) Defendant breached the duty of care of a reasonable person by failing to report her concerns to CPS or mark the November and December emails as confidential; (4) Plaintiff's injuries were foreseeable because Defendant accused her of a felony and acts of moral turpitude; and (5) the deadline for Plaintiff to identify an expert has "gone by the wayside" as the Court considers the Motion. In the Reply, Defendant argues that Plaintiff seemingly alleges medical negligence and fails to cite to any evidence or case law to support that Defendant owed heightened obligations to Plaintiff .

The Court finds instructive *Abadian v. Lee*, 117 F. Supp. 2d 481, 489 (D. Md. 2000). In *Abadian*, the plaintiff, a general manager of a gym, asserted claims of defamation and negligence against her employer and the editor of a men's fitness magazine for harm resulting from a quotation published in an article. The editor of a men's fitness magazine had written an article that had included the following passage:

> Never sign up for a gym membership on the first visit. There's always a better price, says [plaintiff], general manager of Bally's Total Fitness in McLean, Virginia. "Deal to get the price where you want it, then leave," [plaintiff] says. "You should receive a call within a week offering a better price than the one you originally wanted—especially toward the end of the month, when clubs need to meet their monthly numbers."

117 F. Supp. 2d at 484. Thereafter, plaintiff's employer terminated plaintiff specifically due to the passage. The court found that Plaintiff's defamatory claim against both defendants must fail because ultimately the plaintiff failed to produce evidence to demonstrate that defendants acted with the requisite intent. Because plaintiff's negligence claim arose from the defamatory statements, the court found that "plaintiff cannot prevail on a negligence claim after she loses a defamation claim based on the same pleadings." *Id.* at 489. Thus, the court dismissed the negligence claim against the defendants.

As a preliminary matter, the Court finds that not only does Plaintiff fail to clearly articulate what duty Defendant allegedly breached, but also Plaintiff's articulation of a duty is not contemplated by law. *See Remsburg*, 376 Md. at 583, 831 A.2d at 26 (finding foreseeability "alone does not suffice to establish a duty under Maryland law").

Next, when viewing the facts in Plaintiff's favor, the Court finds that Plaintiff's negligence claim is based on the alleged defamatory statements made in the November email. *See generally* Complaint ¶¶ 45-53. Indeed, Plaintiff alleges that Defendant "had a duty not to defame or demean the character of Plaintiff" and that "Defendant breached this duty by publishing per se defamatory statements about Plaintiff. " *See generally* Complaint ¶¶ 46, 47. As held in Sections III.C.5 and III.C.6, Defendant is entitled to summary judgment on Plaintiff's defamation claim. Thus, Plaintiff cannot satisfy her burden on a negligence claim based on Defendant's alleged defamatory statements. *See Anderson v. Fluor Intercontinental, Inc.*, Civ. No.19-0289, 2021 WL 837335, at *29 (E.D. Va. Jan. 4, 2021) (finding plaintiff failure to articulate a cognizable duty for a negligence claim based on defamatory statements was "an improper attempt to repurpose [plaintiff]s defamation claim"). Accordingly, Defendant is entitled to summary judgment on Count III.

**IV.    CONCLUSION**

For the foregoing reasons, the Motion is **GRANTED.**

A separate Order will follow.


Dated:  September 12, 2024

_____/s/_____
The Honorable Gina L. Simms
United States Magistrate Judge
